GORA v CITY OF FERNDALE

Docket No. 148434. Submitted March 23, 1995, at Lansing. Decided
    May 19, 1995, at 9:00 A.M. Leave to appeal sought.

    Hildegard Gora, The Loving Touch, Inc., and other massagists
        and operators of massage establishments in the City of Fern-
        dale brought an action in the Oakland Circuit Court against
        the City of Ferndale and the city clerk, alleging both that the
        Ferndale ordinance regulating massagists and massage estab-
        lishments was unenforceable because state legislation had
        preempted the field and that certain of the provisions of the
        ordinance deprived them of constitutionally protected rights.
        The court, Deborah G. Tyner, J., found that the state statutory
        scheme in the Occupational Code governing myomassology,
        MCL 339.1701 *et seq.*; MSA 18.245(1701) *et seq.*, was not
        pervasive enough to evidence a legislative intent to preempt
        local regulation of massagists, but did find that several of the
        provisions of the ordinance were unconstitutional and, thus,
        unenforceable. The city appealed.

    The Court of Appeals *held:*

    The circuit court erred in its determination with respect to
        the question of preemption. The state statute covers the same
        areas of education, license fees, and inspection of business
        premises and records that are covered by the Ferndale ordi-
        nance, and the statute is comprehensive and highly pervasive.
        Clearly, the Legislature intended to bring uniformity and order
        to the regulation of massagists and massage establishments.
        Although the executive branch, through the Department of
        Licensing and Regulation, may have failed to give effect to the
        legislative mandate, the failure of the executive branch to
        enforce the statutory scheme as adopted does not affect the
        conclusion that the Legislature intended, and apparently still
        does intend, that the state preempt the regulation of the field.

    Order vacated; case remanded to the circuit court for entry of
        an order consistent with this opinion.

REFERENCES

Am Jur 2d, Occupations, Trades, and Professions § 2.
See ALR Index under Business and Commerce.

LICENSES — MASSAGISTS — OCCUPATIONAL CODE — PREEMPTION.

The Legislature by the enactment of the Occupational Code evidenced an intent that the state preempt the regulation of massagists and massage establishments; the fact that the executive branch has not enforced the statutory scheme enacted by the Legislature does not alter the fact of state preemption of the regulation of massagists and massage establishments or permit local regulation (MCL 339.1701 *et seq.*; MSA 18.425[1701] *et seq.*).

*Stephen M. Taylor, P.C.* (by *Stephen M. Taylor*), for Hildegard Gora.

*Rubin & Rubin* (by *Carl L. Rubin*), for the Loving Touch, Inc., and others.

*Brian M. Smith & Associates, P.C.* (by *Brian M. Smith*), for the defendants.

Before: MURPHY, P.J., and MICHAEL J. KELLY and SAAD, JJ.

MICHAEL J. KELLY, J. Defendant appeals as of right an order of the circuit court finding unconstitutional certain portions of a Ferndale ordinance regulating massage establishments and massagists. We vacate the circuit court's order and hold that the entire ordinance is unenforceable because the regulation of massagists has been preempted by the Occupational Code, MCL 339.101 *et seq.*; MSA 18.425(101) *et seq.*, and in particular by its provisions regarding the practice of myomassology, MCL 339.1701 *et seq.*; MSA 18.425(1701) *et seq.*

At issue is Ferndale's Ordinance No. 832, amended by Ordinance No. 836. Section 7-247(a) and (b) of the ordinance require both massage parlors and massagists to obtain valid city permits in order to practice their trade. Sections 7-249 and 7-250 set forth the requirements for obtaining such licenses. An applicant must show proof of gradua-

tion from a "recognized school" that taught massage. Section 7-249(m). A "recognized school" includes

> any school or educational institution licensed to do business in the state in which it was located, or any school recognized by . . . the American Massage and Therapy Association, Inc., and which has for its purpose the teaching of . . . massage. [Section 7-246(k).]

Section 7-266 specifies several unlawful acts involving the practice of massage. Section 7-266(a) prohibits massagists from treating persons of the opposite sex except upon the signed order of a licensed physician, chiropractor, or physical therapist. Massage establishments are required to keep specific records of any such intergender massages, and such records are subject to inspection by police. Section 7-266(b) prohibits any person in a massage establishment from touching sexual, genital, and sensitive parts of the anatomy. Section 7-266(c) prohibits any person in a massage establishment from "exposing his or her sexual or genital parts . . . to any other person." Under § 7-266(d), it is illegal for persons in massage establishments "to fail to conceal with a fully opaque covering, the sexual or genital parts of his or her body."

Section 7-265 authorizes the chief of police to make inspection of massage establishments from time to time for purposes of determining compliance with the ordinance. That section also makes it unlawful for any licensee to hinder such inspection in any manner.

Section 7-261 prohibits anyone under eighteen years of age from being on the premises of a massage establishment. Under § 7-255(b), proof of identity must be shown by every patron of a massage establishment.

Plaintiffs, who are massagists and operators of massage establishments, sued defendant under 42 USC 1983 and 42 USC 1988, alleging that these portions of the Ferndale ordinance deprived them of constitutionally protected rights. The circuit court found that the state statute regulating the practice of myomassology was not pervasive enough to evidence a legislative intent to preempt the Ferndale ordinance. However, the court found several provisions of the ordinance unconstitutional.

We believe the circuit court erred in its analysis of the preemption issue. In Michigan, the principle of preemption precludes a municipality from enacting an ordinance where (1) the ordinance is in direct conflict with the state statutory scheme, or (2) the state statutory scheme "pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation." *People v Llewellyn,* 401 Mich 314, 322; 257 NW2d 902 (1977), cert den sub nom *East Detroit v Llewellyn,* 435 US 1008 (1978).

Certain guidelines are used in determining whether the state has preempted a given field of regulation. First, preemption occurs where the state law expressly provides that its authority to regulate in a specified area of law is exclusive. *Id.* at 323. That is not the case here. Second, preemption may be implied from an examination of legislative history. *Id.* Third, the pervasiveness of the state regulatory scheme may indicate an intent to preempt. *Id.* Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to achieve the state's purpose. *Id.* at 324. Where the nature of the subject matter regulated calls for a uniform

state regulatory scheme, supplementary local regulation is preempted. *Id.* at 325. Where the subject matter of the local ordinance involves the potential restriction of important civil liberties, protection of the people's civil liberties requires that the state retain sole control of such regulation. *Id.*

Our review of the Occupational Code, which includes the state regulations on myomassology, MCL 339.1701 *et seq.*; MSA 18.425(1701) *et seq.*, indicates a pervasive and comprehensive scheme to provide statewide licensing and regulation of over twenty various professions. Under the Occupational Code, the Department of Licensing and Regulation is empowered to issue licenses to practice in these professions pursuant to the requirements set forth in the statute and to additional rules and standards of acceptable practice set by the various boards formed under the code, including the Board of Massage. MCL 339.202; MSA 18.425(202); MCL 339.308; MSA 18.425(308). The roles of the department and the boards are extensive under the statutory scheme and include the power to set licensing standards for occupational schools and individuals, to set license fees, to hold investigations and hearings, to revoke licenses, to assess penalties, and to prosecute actions against violators. See MCL 339.202-339.605; MSA 18.425(202)-18.425(605).

Licensing and regulation of massagists ("myomassologists") and massage establishments is provided under §§ 1701-1707 of the Occupational Code.[1] Section 1702, MCL 339.1702; MSA 28.425(1702), creates the Board of Massage. Section

---

[1] The term "myomassologist" is defined simply as "a person who offers the person's services for hire in the practice of massage." MCL 339.1701(c); MSA 18.425(1701)(c). The use of the special term "myomassology" in the statute does not render the focus of the statute any narrower than that of the Ferndale ordinance. Both deal generally with the practice of massage.

1703, MCL 339.1703; MSA 18.425(1703), sets forth license requirements. Section 1704, MCL 339.1704; MSA 18.425(1704), lists prohibited acts. It also allows department inspectors to visit and enter massage establishments during business hours in order to inspect the business and its records for compliance with state laws and regulations.

The state statute not only establishes rules in many of the same areas addressed by the Ferndale ordinance—e.g., educational requirements, license fees, and inspection of the business premises and records—but it also empowers the board to establish additional regulations that conceivably could affect any aspect of the practice of massage. In short, the scope of the statute is comprehensive and highly pervasive. Further, the nature of the subject matter regulated (i.e., the practice of a chosen occupation) involves an important civil liberty and calls for a uniform regulatory scheme. See *Greene v McElroy,* 360 US 474, 492; 79 S Ct 1400; 3 L Ed 2d 1377 (1959); *Llewellyn, supra* at 325. In fact, the overriding concern that fueled the passage of the Occupational Code was to bring uniformity and order to the existing rules and procedures. See House Legislative Analysis, HB 4114, November 12, 1980. We therefore hold that the Occupational Code preempts the Ferndale ordinance in its entirety.

The circuit court's analysis of the preemption issue also included an alternative finding that the issue was moot because the statute regulating the practice of massage, enacted in 1980, was never implemented. However, the lack of implementation represents a failure by the executive branch to carry out legislative intent. It has no weight in the determination whether the Legislature intended to occupy the regulated field, which is the dispositive issue in preemption cases. See *Llewel-*

*lyn, supra* at 321. See also *Local No. 1, Broadcast Employees of Int'l Brotherhood of Teamsters v Int'l Brotherhood of Teamsters,* 419 F Supp 263, 277 (ED Pa, 1976); *Serrano v Serrano,* 213 Conn 1, 5; 566 A2d 413 (1989); *Loma Portal Civic Club v American Airlines, Inc,* 61 Cal 2d 582, 591; 394 P2d 548 (1964). Also immaterial is the contention by the Department of Licensing and Regulation that the statute is "defective." We know of no case law finding the statute defective and of no authority allowing the department to make such a legal determination itself. Similarly, we do not believe that the department can single-handedly nullify the Legislature's intent to occupy the field of massage regulation simply by referring potential license applicants to local officials.[2]

We acknowledge the danger that our holding regarding the preemption issue effectively leaves the practice of myomassology unregulated.[3] We also acknowledge that the City of Ferndale has legitimate interests in the area that are not being addressed adequately at the state level. However, the Legislature has spoken, and it is clear that it has opted to occupy the field of massage regulation. If the Legislature no longer intends that the state should preempt the field, it should indicate so by way of amendment of or repeal of the statute.[4] Otherwise, it can take issue with the

---

[2] The statements concerning the state statute being "defective" and referring potential license applicants to local officials appear in a letter issued by the department in response to inquiries regarding the practice of massage.

[3] Of course, other state and local laws are still available to prevent the use of "massage establishments" as houses of ill repute. For example, counsel for the City of Ferndale noted at oral argument that the business of plaintiff The Loving Touch, Inc., has been padlocked because of unlawful sexual conduct on the premises.

[4] In fact, as of 1988, the Legislature apparently had not yet changed its mind. In 1988 PA 463, the Legislature amended MCL 339.1707; MSA 18.425(1707), which deals with reciprocal recognition of myomas-

executive branch for failing to implement the legislative scheme. Either way, it is not the prerogative of the City of Ferndale to pick up the ball merely because the executive and legislative branches have dropped it.

Because of our holding regarding the preemption issue, we need not address the alleged constitutional violations.

The order is vacated and this matter is remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

MURPHY, P.J., concurred.

SAAD, J., concurred in the result only.

sology licenses from other states. It also repealed MCL 339.1706; MSA 18.425(1706), which related to the form of license applications for myomassology. The Legislature left all other provisions regarding myomassology intact.